Johnnie McFerrin et al. v. Ward Templeman et al.

No. 1967. Decided June 16, 1909.

**Vendor and Vendee—Note Payable to Heirs—Gift.**

Land was conveyed in consideration of quarterly payments of $50 to be made to the grantor during life and $2400 to be paid to her heirs after her death, the same being secured by grantee's note and express reservation of vendor's lien therefor in the deed; the grantor deposited the note with another,

saying, "this is for my children and my will;" subsequently, by agreement with the grantee, she set aside the first bargain and conveyed the land to him for a consideration payable to herself; on her death her heirs sought to enforce the first note, as being a completed gift which was not affected by her new contract. Held, that the note was such completed gift only if payable to persons then definitely determined; that the contract contemplated payment to those who should be her heirs on her death, which was uncertain, not to those living at the time of the contract who would inherit if she then died; that there being no certain payees, and hence no completed gift of the first note, it remained in the power of the grantor and grantee to change their contract, and their agreement so doing invalidated the first note. (Pp. 532-535.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Brazos County.

McFerrin and others sued Templeman and others and obtained judgment. Defendants appealed and secured reversal and rendition of judgment in their favor. Appellees thereupon obtained writ of error.

*Haynes Shannon* and *A. G. Board,* for plaintiffs in error.—There is no uncertainty as to the payees. By the term heirs, Zilpha McFerrin clearly meant her children and descendants who in this case are proven to be her grandchildren. Love v. Francis, 6 Am. St. Rep., 290; Waddell v. Waddell, 12 S. W., 349; Shirey v. Clerk, 81 S. W., 1057.

*Geo. D. O'Neal* and *Doremus & Butler,* for defendants in error.— A promissory note to be valid as an instrument upon which a cause of action may be founded, must identify, with certainty, the person or persons to whom the money is to be paid and with whom the contract is deemed to have been made. The certainty as to the payee must exist at the time the instrument is made. If made payable to an individual or class that has no existence at the time it is made, the note will be void, even though an individual or class, answering to the description should subsequently come into existence. 1 Daniel on Negotiable Instruments, sec. 99; Norton on Bills and Notes, 62; 1 Parson on Contracts (6th ed.), 250; 1 Waits' Actions and Defenses, 538-541; Eckford v. Knox, 67 Texas, ·200; Tiedeman on Real Estate, sec. 997; Booker v. Tarwater, 37 N. E., 979; Morris v. Stephens, 46 Pa., 200; Dupree v. Dupree, 45 N. C., 164.

It is essential to the validity of a gift that the donor must be competent to contract, there must be freedom of will, the gift must be complete with nothing left undone, the property must be delivered by the donor and accepted by the donee and the gift must go into immediate and absolute effect. The circumstances must be such as to show that a present gift is intended. A gift to take effect at a future time is void. An estate in personal property to commence in future can not be made by parole. 8 Am. and Eng. Ency. Law, 1313-1315; Chevallier v. Wilson, 1 Texas, 173; Ragan v. Hill, 80 S. W., 150; Wilson v. Edwards, 94 S. W., 928.

Where no present interest passes by a gift, but it is to take effect after the death of the donor, the disposition is testamentary and the gift is a legacy. Crain v. Crain, 21 Texas, 793; Murphy v.

Gabbert, 66 S. W. R., 536; Waynesburg College Case, 56 Am. Rep., 252; Industrial Trust Co. v. Scanlon et al., 3 Am. and Eng. An. Cases, 863-4; Noble v. Garden, 2 Am. and Eng. An. Cases, 1002-4; Hunt v. Hunt, 82 S. W., 998; Reynolds v. Towll, 11 S. W. R., 202; Penkhorn v. Penkhorn, 76 N. W., 411.

Mr. Justice Williams delivered the opinion of the court.

The plaintiffs in error brought this action against M. W. Peterson, Ward Templeman and W. J. Foster upon a note of Peterson executed to plaintiffs' ancestress, Mrs. Zilpha McFerrin, as part of the consideration for a tract of land conveyed to him by her, and to foreclose the vendor's lien on the land. The pleadings and evidence developed the following facts upon which the rights of the parties depend. On June 22, 1894, Mrs. Zilpha McFerrin joined by her husband conveyed to Peterson the land in question, her separate property, in consideration of which he paid her $50 cash, and agreed to pay to her the same amount every three months during her life, and further agreed to pay to her heirs, on her death, the sum of $2400, which was to bear ten percent interest from the date of her death. Peterson executed his note obligating himself as stated, which was fully recited in the deed in which a vendor's · lien was retained to secure the stipulated payments. At some time not fixed in the record Mrs. McFerrin delivered Peterson's note to Jesse McFerrin, whose relationship to the parties does not appear, "and stated that she wanted him to keep the same, and stated that this is for my children and my will." Peterson made several of the quarterly payments stipulated for to Mrs. McFerrin while the note was held by Jesse McFerrin. Mrs. McFerrin's husband died in 1898, and on January 25, 1899, she and Peterson entered into a new arrangement concerning the land, expressed in her deed to him of that date. The express purpose of this, and its legal effect, if valid, was completely to rescind the former trade and to convey to Peterson the land in consideration of $1500 secured by his notes, and to release him from the note given in the first transaction. The latter deed, after reciting the former trade and that it was superseded, etc., contained this expression: "It being intended to make present conveyance of a present right and title and to convey in all things the present right of use, enjoyment and possession." On October 29, 1900, Peterson conveyed the land to Templeman and Foster, who paid a valuable consideration with only such notice of the lien asserted by plaintiffs as was given by the two deeds above referred to, both of which were of record. Zilpha McFerrin died in 1901 and left, as her heirs, one child and three grandchildren, in whose behalf this action is prosecuted. The record does not contain the facts from which it can be definitely ascertained who were the persons who would have been her heirs, had she been dead at the date of her first deed to Peterson.

The District Court rendered judgment for the plaintiffs, holding that by taking the note of Peterson payable on her death to her heirs Mrs. McFerrin made a complete and irrevocable gift of such note to the persons who proved to be her heirs. The Court of Civil

Appeals held otherwise and reversed this judgment and rendered one for defendants.

The second contract between Mrs. McFerrin and Peterson necessarily extinguished the note sued on if it was in the power of those parties to accomplish such a result by any agreement they could make. It is plain that they had such power, unless a completed gift had been made to others of the right to the purchase money represented by the note, for unless such a right had arisen in others it is necessarily true that the contracting parties had complete control over their own transactions and could shape them as they chose. Unless a completed gift had taken place, all that had been done was subject to the power of revocation of Mrs. McFerrin. In what view of the transaction can it be considered to have been a completed gift? What seemed to the Court of Civil Appeals to be an insuperable obstacle was the want of a definitely ascertained donee in whom the right in praesenti could vest. Those to whom it is contended the gift was made were mentioned only as the heirs of Zilpha McFerrin. She could have no heirs before her death, and until that occurred the persons who were to take the money could not be known. No right could vest in anyone so long as she lived and hence there was nothing to prevent the revocation which she made. Such is the reasoning of the Court of Civil Appeals and it is unanswerable unless the language of the note specifying the payees as the "heirs of Zilpha McFerrin" can be held to refer to persons then in being, *as donees,* such persons being those standing in such relation to Mrs. McFerrin as would have made them her heirs at law had she been dead. That the note has this meaning is the contention of plaintiffs' counsel. That construction would give it the same legal effect as if such persons had been named as its payees. It may be that the taking of a note, in such a transaction, payable to a child or grandchild, would furnish sufficient evidence of an intent to make, and would, in itself, supply all that would be necessary to constitute, a gift of such note and of the right represented by it. Such a transaction might have the same legal effect as if the note were made payable to the grantor and were then assigned and delivered, as a gift, to the donee. But to give such effect to the transaction under consideration we must find in it sufficient evidence of (1) an intent to make a present gift to persons in being who were meant by the word heirs, and (2) the doing of all that was essential to transfer Mrs. McFerrin's right to such persons. Do the facts show an intent to make a present gift to anyone? We think not. All that appears, putting aside for the present the delivery of the note to Jesse McFerrin, is that Mrs. McFerrin took Peterson's promise to pay the money to her heirs, on her death. Who were the persons referred to as her heirs? The time when the payment is to be made is after her death, the payees are then to be ascertained, and naturally they are to be those whom the law shall then designate as heirs. To express fully the meaning attributed to it by plaintiffs' counsel the note should read: "On the death of Mrs. Zilpha McFerrin I promise to pay to those persons who if she were now dead would be her heirs." This would make

the money payable absolutely to such persons or their representatives on her death, to the exclusion of any other heirs she might leave. How much more simply such an intent would have been expressed by making the note at her death payable by name to such persons or their heirs. To make her act mean this we must supply an unexpressed intention to make a present gift by adding other language to that employed. Her own words, by themselves, express no such meaning or intent. Naturally interpreted they import only that she is making provision for an income out of the estate for herself during her life and a disposition of the balance of the purchase money to her heirs to take effect after her death. It is true that the word heirs is often used with reference to persons bearing certain relations, such as that of children, to living persons, but that is not a correct use of it. It requires knowledge of the intention of the person so using it to enable us to ascribe to it such a meaning. The only reason that could be assigned for saying that such a use was made of the word here would be that Mrs. McFerrin designed to make a present gift to persons whom she had in mind, and therefore, in order to effectuate that intent, must have referred to them; but this assumes the very thing which must be shown and which is not otherwise shown, i. e., the purpose to make a gift to take effect *in praesenti*. That intention must affirmatively appear. It does not so appear, but, on the contrary, the purpose naturally inferable from the expressions used is to postpone the accrual of the right of her heirs until her death. Her language when delivering the note to Jesse McFerrin bears out this interpretation. It is not properly expressive of a present gift, but of a testamentary disposition to take effect after her death. The expressions in the second deed and the entire conduct of herself and Peterson imply the same construction and understanding of the first transaction. Of course, if a completed gift had been made in that transaction its effect would not be impaired by the subsequent conduct of the parties. But we are now inquiring whether or not the indispensable intention to make a present gift appears from the transaction, and we find that neither in the language used in the instrument nor in any of the conduct of the parties is it revealed. The very form of the first conveyance, with the effect which the law of this State gives to such instruments, affords powerful evidence against the plaintiffs' contention. The deed and the note stipulate for quarterly payments to the grantor during her life and for the final payment of $2400 to her heirs on her death. A vendor's lien is retained to secure all these payments. This is the form commonly adopted in this State to leave the contract executory and the legal title in the grantor, with power to rescind upon default in any payment. We think it should be assumed that it was advisedly adopted to have the effect given by law to such contracts. In this view Mrs. McFerrin would have had power, upon default in any quarterly payment, to put an end to the contract. Such a power in her would be fatal to the contention of a completed gift *inter vivos* since it would enable her to put an end to the contract and to all liability on the note. On her death the legal title to the land and the right to the purchase

money would have united in her lawful heirs and they would have had the same rights and powers which she had in her lifetime. Thus, the form of the conveyance harmonizes exactly with the conclusion that the words of the documents, "the heirs of Zilpha McFerrin," were properly and correctly used to designate those persons appointed by law to inherit from her on her death. The other contention would, as we have shown, give to the mere execution of the conveyance and the taking of the note the effect of at once vesting in other persons, then ascertained, the right to the purchase money, just as if the vendor had taken the vendee's note payable to herself and had assigned and delivered it to those persons. This would have put it out of her power to rescind for default in the payments due to herself so as to defeat the lien of her donees. (Russell v. Kirkbride, 62 Texas, 455.)

On her death the legal title would have descended to those persons whom the law then determined to be her heirs, while the right to the purchase money, according to plaintiffs' contention, vested in those persons who would have been her heirs at the date of the first transaction, or in their heirs. In this case it may be that the same persons would take under either view, but it would not always be so. Thus it appears that such a construction of the transaction would defeat the very purposes for which the form in which it was put was probably chosen.

All this is avoided by viewing the transaction as we have stated it, and as we are satisfied the parties intended it.

We have discussed the question at greater length than its inherent difficulty seems to us to require because of the fact that plaintiffs' contention seems to be substantially sustained by the main opinion in the case of Love v. Francis, 63 Mich., 181. That case involved a transaction singularly like that here in question except that there was never any revocation by the grantor, who occupied the position that Mrs. McFerrin occupies in this case, before his death, and the contest was between his administrator and his heirs as to the right to the fund made payable to the heirs after the death of the grantor. The decision was in favor of the heirs, the opinion of Mr. Justice Champlin holding that there was a completed gift *inter vivos* shown by the transaction itself. The report states that of the other four judges one concurred, one did not sit and a third (Mr. Justice Campbell) wrote an opinion concurring in the result for reasons entirely consistent with our holding. There is no expression from the other justice. As we have indicated, we can not agree that there was a gift *inter vivos*, for the reasons that (1) no intention to make one sufficiently appears, and (2) Mrs. McFerrin reserved a power over the right which was the object of the alleged gift inconsistent with any hypothesis that such right had vested absolutely in any donee.

*Affirmed.*