Affirmed and Memorandum Opinion filed December 7, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00364-CV

___________________

 

Greater Houston Development, Inc.,
Appellant

 

V.

 

Harris County, Texas and Harris County
Hospital District, Appellees



 



 

On
Appeal from the County Civil Court at Law No. 2

Harris County,
Texas



Trial Court Cause No. 868,121

 



 

 

MEMORANDUM OPINION

Greater Houston Development, Inc.,
appeals from a grant of a plea to the jurisdiction favoring appellees, Harris
County, Texas and Harris County Hospital District.  Greater Houston sued
appellees for inverse condemnation based on the alleged destruction of some of
its property.  In two issues, Greater Houston contends that (1) its petition
affirmatively demonstrated that the trial court had jurisdiction, and (2) in
the alternative, there are fact issues precluding granting the plea to the
jurisdiction.  We affirm.

I.  Background

In its petition, Greater Houston Development, Inc. represented
that it is a nonprofit corporation dedicated to the “redevelopment of northeast
Houston” through, among other things, “creating affordable housing” in that
area.  Toward that goal, on July 16, 2004, Greater Houston entered into a
series of Donation Agreements with TexTac Partners I, whereby TexTac agreed to
donate a number of houses to Greater Houston.  Under the terms of the
agreements, Greater Houston
agreed to remove the houses from TexTac’s property by November 30, 2004.  “Upon
removal of [each of] the Building[s] from [TexTac’s] Land pursuant to the terms
of the Agreement, [TexTac was to] execute and deliver to [Greater Houston] a
Bill of Sale and Assignment in order to effectuate the proper transfer,
conveyance and assignment of title of Building and any other related property
to [Greater Houston].”  In each of the agreements, Greater Houston and TexTac
further agreed that either could terminate the agreement “for any reason at any
time before removal of the [respective] Building from [TexTac’s] Land.”  An
additional clause in each agreement stated that “[t]his Agreement constitutes
the entire understanding of the parties with respect to the subject matter
hereof.”

On July 1, 2006, Greater Houston filed an inverse
condemnation lawsuit against Harris County and the Harris County Hospital
District, alleging that these entities caused the houses to be removed,
damaged, and destroyed without Greater Houston’s permission.[1]  In 2004, the Hospital
District apparently condemned and took possession of various tracts of land
owned by TexTac as part of the LBJ Hospital Expansion Project.  Harris
County Hospital District v. TexTac Partners I, 257 S.W.3d 303, 306 (Tex.
App.—Houston [14th Dist.] 2008, no pet.).  Greater Houston’s petition indicates
that the subject houses were still on TexTac’s former property at the time they
were demolished.

Appellees filed a motion to dismiss for want of
jurisdiction/plea to the jurisdiction, challenging the trial court’s subject
matter jurisdiction over Greater Houston’s claims.[2]  Specifically,
appellees asserted that Greater Houston did not have an interest in the subject
property sufficient to bring the inverse condemnation action.  In support of
their contention, appellees relied primarily on language in the Donation
Agreements between Greater Houston and TexTac that appeared to make the gifts
contingent on certain occurrences and revocable until those occurrences happened. 
In response, Greater Houston filed affidavits from Les Allison, a former
president of TexTac, and Robin German Curtis, the president of Greater Houston,
in which they asserted that their intention in entering the agreements was to affect
an immediate conveyance of the houses.  The trial court granted appellees’
motion/plea and dismissed the lawsuit for want of jurisdiction.

II.  Standards of Review

We consider a trial court’s grant of a plea to the
jurisdiction under a de novo standard.  See State v. Holland, 221 S.W.3d
639, 642 (Tex. 2007).  Generally, a plaintiff bears the burden to plead facts
affirmatively demonstrating subject matter jurisdiction.  Id.  A plea to
the jurisdiction can challenge either the sufficiency of the plaintiff’s
pleadings or the existence of jurisdictional facts.  Tex. Dept. of Parks
& Wildlife v. Miranda, 133 S.W.3d 217, 226-27 (Tex. 2004).  When a plea
attacks the pleadings, the issue turns on whether the pleader has alleged
sufficient facts to demonstrate subject matter jurisdiction.  Id.  In
such cases, we construe the pleadings liberally in the plaintiff’s favor and
look for the pleader’s intent.  See City of Waco v. Lopez, 259 S.W.3d
147, 150 (Tex. 2008).  When a plea to the jurisdiction challenges the plaintiff=s pleadings and not the
existence of jurisdictional facts, we assume the facts pleaded to be true.  See
Westbrook v. Penley, 231 S.W.3d 389, 405 (Tex. 2007).  Furthermore, we
generally may not assess the merit of the plaintiff’s claims.  See County of
Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002).

When a plea to the jurisdiction challenges the
existence of jurisdictional facts, a court may consider evidence in addressing
the jurisdictional issues.  Miranda, 133 S.W.3d at 227.  If the evidence
reveals a question of fact on the jurisdictional issue, the trial court cannot
grant the plea, and the issue must be resolved by a factfinder.  Id. at
227-28.  If the evidence is undisputed or fails to raise a question of fact,
the court should rule on the plea as a matter of law.  Id. at 228. 
After a defendant asserts, and supports with evidence, that the court lacks
subject matter jurisdiction, the plaintiff must show the existence of a
disputed fact issue in order to avoid dismissal for want of jurisdiction.  Id. 
The standard of review for such jurisdictional disputes “generally mirrors that
of a [traditional] summary judgment.”  Id.

A party seeking affirmative relief must have standing
in order to invoke a court’s subject matter jurisdiction.  DaimlerChrysler
Corp. v. Inman, 252 S.W.3d 299, 304 (Tex. 2008).  Without breach of a legal
right belonging to the plaintiff, no cause of action can accrue to its
benefit.  See Nobles v. Marcus, 533 S.W.2d 923, 927 (Tex. 1976).  When a
plaintiff lacks standing, the proper disposition is to dismiss the lawsuit.  Inman,
252 S.W.3d at 304.

III.  Analysis

A.  Was the Trial Court Limited to Reviewing Only
the Pleadings?

           In its first
issue, Greater Houston maintains that its petition affirmatively demonstrated
that the trial court had jurisdiction over the claims raised.  Moreover,
Greater Houston complains that the trial court improperly treated appellees’
plea as a motion for summary judgment and delved into the facts.  Greater
Houston further insists that it properly pleaded a taking and that appellees
never challenged the pleadings as deficient or filed special exceptions.  In
making these arguments, Greater Houston misconstrues both the nature of
appellees’ plea and controlling precedent from the Texas Supreme Court.

            On page one of
the plea, appellees state that they are challenging the existence of
jurisdictional facts.  Appellees then proceed to specifically argue, not that
Greater Houston failed to properly plead a takings claim, but that certain
facts establish that the court in fact was without jurisdiction because Greater
Houston did not possess an interest in the houses sufficient to bring an
inverse condemnation action for their destruction.  In support, appellees
submitted evidence, including the Donation Agreements between Greater Houston
and TexTac. Appellees argued that the proffered evidence demonstrated that a
gift had yet to occur at the time the houses were destroyed.

Under the Texas Supreme Court’s Miranda
opinion, when a plea to the jurisdiction challenges the existence of
jurisdictional facts, the trial court can consider evidence in determining
whether it has jurisdiction over the case.  133 S.W.3d at 227; see also Bland
I.S.D. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000) (“[A] court deciding a plea
to the jurisdiction is not required to look solely to the pleadings but may
consider evidence and must do so when necessary to resolve the jurisdictional
issues raised.”).  Here, because appellees’ plea challenged the existence of
jurisdictional facts, the trial court was not limited to looking solely to the
pleadings but properly considered evidence in determining whether it had
jurisdiction over Greater Houston’s claims.  Accordingly, we overrule Greater
Houston’s first issue.

            B.  Did the
Evidence Raise a Fact Question Precluding Dismissal?

In its second issue, Greater Houston asserts that if the
trial court properly considered evidence, there is at least a fact issue
regarding whether the court had jurisdiction.  Therefore, it argues, the trial
court was precluded from granting appellees’ plea to the jurisdiction.  Greater
Houston alleges that the evidence upon which appellees rely does not pertain to
the court’s jurisdiction but instead goes to the very merits of the case. 
Greater Houston also claims that the two affidavits it presented demonstrate
that it had a sufficient interest in the subject properties to establish the
trial court’s jurisdiction over the action or to at least raise a fact issue regarding
jurisdiction.

In their plea, appellees contended that Greater
Houston did not have an interest in the houses sufficient to bring an inverse
condemnation action for their demolition, thereby   challenging Greater
Houston’s standing to bring the lawsuit.  See Austin Nursing Ctr., 171
S.W.3d at 848.  In order to have standing to sue for inverse condemnation, a
party must have a vested property interest in the subject property at the time
of the alleged taking.  Tex. S. Univ. v. State Street Bank & Trust Co.,
212 S.W.3d 893, 903 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing City
of Keller v. Wilson, 168 S.W.3d 802, 808 (Tex. 2005), and State/Operating
Contractors ABS Emissions, Inc. v. Operating Contractors/State, 985 S.W.2d
646, 651 (Tex. App.—Austin 1999, pet. denied)); see also Cypress Forest
P.U.D. v. Kleinwood M.U.D., 309 S.W.3d 667, 675 (Tex. App.—Houston [14th
Dist.] 2010, no pet.) (holding trial court erred in denying plea to the
jurisdiction in takings case where plaintiff failed to plead a vested property
interest); City of Houston v. Northwood M.U.D. No. 1, 73 S.W.3d 304,
308-10 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (surveying cases).  A
property right is considered “vested” when it has definitive, rather than
merely potential, existence.  City of La Marque v. Braskey, 216 S.W.3d
861, 864 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); State Street
Bank, 212 S.W.3d at 903; see also Black’s Law Dictionary 1595 (8th
ed. 2004) (defining “vested” as “[h]aving become a completed, consummated right
for present or future enjoyment; not contingent; unconditional; absolute”).

The question here, then, is whether Greater Houston
possessed a vested property right in the houses at the time they were allegedly
destroyed.  Greater Houston asserts that the houses were donated to it by
TexTac before their destruction.  For an inter vivos gift, or a gift made
during the donor’s lifetime, to be effective:

title to the item must pass immediately and unconditionally
and the transfer thereof must be so complete that the donee might maintain an
action for the conversion of the property.  There must be a delivery of the
possession of the chattels by the donor to the donee with the intention on the
part of the donor to vest the ownership of the chattels in the donee,
immediately and unconditionally.  The owner must, at the time he makes the
alleged gift, intend immediate divestiture of rights of ownership out of
himself and the consequent and immediate vesting of such rights in the donee. 
All dominion and control over the property must be released by the owner. 
Until a donor has divested himself, absolutely and irrevocably of the title,
dominion, and control of the subject of the gift, he has the power to revoke
it.  If the donor has the power to revoke, there is no valid gift.

Oadra v. Stegall, 871
S.W.2d 882, 890 (Tex. App.—Houston [14th Dist.] 1994, no writ) (internal
citation and quotation omitted).

In support of their contention that Greater Houston
did not possess a vested right at the time of the alleged taking, appellees
relied primarily on language in the Donation Agreements between Greater Houston
and TexTac.  Contrary to Greater Houston’s contention, these agreements were
highly relevant to the jurisdictional issues in the case and did not relate
solely to the ultimate merits of the takings claims.  Under the terms of the
agreements, Greater Houston
agreed to remove the houses from TexTac’s property by November 30, 2004.  “Upon
removal of [each of] the Building[s] from [TexTac’s] Land pursuant to the terms
of the Agreement, [TexTac was to] execute and deliver to [Greater Houston] a
Bill of Sale and Assignment in order to effectuate the proper transfer,
conveyance and assignment of title of Building and any other related property
to [Greater Houston].”  Each agreement further provided that either party could
terminate the agreement “for any reason at any time before removal of the
[respective] Building from TexTac’s] Land.”  Lastly, each agreement stated that
“[t]his Agreement constitutes the entire understanding of the parties with
respect to the subject matter hereof.”  Greater Houston’s own pleadings
acknowledged that the houses in question were still on TexTac’s property, or
former property, at the time the alleged takings occurred.

Clearly, the terms of the Donation Agreements
evidenced an intention by TexTac to donate property to Greater Houston.  But
just as clearly, the gift was conditioned upon the happening of certain
occurrences, including removal of the houses from the land, and was revocable
for any reason before the removal of the houses.  It is further undisputed that
the conditions listed in the agreements did not occur, chiefly that the houses
were not removed by Greater Houston.

Greater Houston, however, points to the two
affidavits it filed in response to the plea to the jurisdiction.  Based on
these affidavits, Greater Houston argues that it established that the gifts had
been constructively delivered even though it did not remove the houses from the
property as required by the Donation Agreements.  In his affidavit, Les
Allison, a former president of TexTac, stated that his intention had been to
“absolutely and irrevocably divest [him]self of the title, dominion, and control
of the homes and deliver them to Greater Houston.”  He further averred that it
was his opinion that once each agreement was signed, he “held no further
dominion or control over the homes.”  Regarding the language in the agreements
making the gifts conditional and revocable, Allison said that this was intended
simply to protect Greater Houston “and in no way affected [his] intent to
donate the homes.”  In his affidavit, Robin German Curtis, president of Greater
Houston, echoed the exact same sentiments presented in Allison’s affidavit.

The operative documents here are the Donation
Agreements.  When parties have entered into a valid, integrated, and
unambiguous agreement, as Greater Houston and TexTac have in this case, that
agreement must be enforced as written, and parol evidence may not be used to
add to, vary, or contradict the terms set forth in the agreement itself.  See,
e.g., Adams v. McFadden, 296 S.W.3d 743, 752, (Tex. App.—El Paso 2009,
pet. granted, judgment vacated, and remanded by agreement); Edascio, L.L.C.
v. NextiraOne L.L.C., 264 S.W.3d 786, 796 (Tex.App.-Houston [1st Dist.]
2008, pet. denied).  Greater Houston does not contend that the agreements are
invalid; indeed, its very cause of action depends on their validity.  The
agreements contain provisions specifying that they are the “entire
understanding of the parties with respect to the subject matter,” and they are
clear and unambiguous.  Accordingly, as parol evidence of the intentions behind
the agreements, the affidavits are irrelevant to a proper interpretation of the
agreements.

Under the definition of gift in Oadra, the
evidence established that no gift had occurred because Greater Houston had not
removed the houses from the land as required under the Donation Agreements.  871
S.W.2d at 890.  Thus, at the time of the alleged taking, Greater Houston had no
vested right in the houses and no standing to bring an inverse condemnation
action for their destruction.  See State Street Bank, 212 S.W.3d at
903.  We overrule Greater Houston’s second issue.

We affirm the trial court’s judgment.

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief
Justice Hedges, Justice Yates, and Senior Justice Mirabal.[3]

 









[1] In the same lawsuit,
Greater Houston also brought claims against allegedly related companies: 
Cherry House Moving Company, Inc. and Cherry Demolition, Inc.  According to
Greater Houston, Cherry Demolition performed the actual demolition work on the
houses while, at the same time, Cherry House Moving was under contract with
Greater Houston to move the houses from TexTac’s property.  The Cherry
entities, however, are not parties to this appeal, and no issues are raised in
the appeal concerning their involvement in this case.





[2] Appellees’ pleading was
entitled “Motion to Dismiss for Lack of Jurisdiction” but internally referred
to itself as a plea to the jurisdiction.  There is no meaningful distinction
between the two labels. See, e.g., Dahl v. State, 92 S.W.3d 856,
860 (Tex. App.—Houston [14th Dist.] 2002, no pet.).





[3] Senior Justice Margaret
Garner Mirabal sitting by assignment.